# Exhibit 1

FILED: NEW YORK COUNTY CLERK 06/03/2019 03:07 PM
NYSCEF DOC. NO. 1
INDEX NO. 653254/2019
RECEIVED NYSCEF: 06/03/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Arbitration between

TEACHERS COLLEGE, COLUMBIA UNIVERSITY,

            Petitioner,

For Judgment Pursuant to Article 75 of the CPLR

       - against -

LOCAL 2110, TECHNICAL, OFFICE AND
PROFESSIONAL UNION, UNITED AUTO WORKERS,
AFL-CIO,

            Respondent.

**VERIFIED PETITION TO VACATE ARBITRATION AWARD**

Index No.: _____

  Petitioner, Teachers College, Columbia University ("College" or "Petitioner"), for its Petition in this special proceeding, alleges as follows:

### The Parties

  1. Petitioner is a graduate school of education, health and psychology located at 525 West 120th Street, New York, NY.

  2. Respondent, Local 2110, United Auto Workers, AFL-CIO ("Union" or "Respondent") is a labor union located at 256 W. 38th Street, Suite 704, New York, NY.

### Background Facts

  3. Petitioner and Respondent are parties to a collective bargaining agreement ("CBA") in effect from March 1, 2007 to February 29, 2012 ("Agreement"), which was extended by two subsequent Memoranda of Agreement ("MOAs") covering periods from March 1, 2012 to February 28, 2015 and from

March 1, 2015 to February 28, 2018. Other than a minor change to the Grievance and Arbitration Procedure (Article XIII), the changes to the Agreement set forth in the MOAs do not alter any of the contractual provisions at issue here. A copy of the Agreement is attached as Exhibit A; and a copy of the MOAs are attached as Exhibit B and Exhibit C, respectively.

**Relevant Contractual Provisions**

4. Article XII ("Overtime") states as follows:

1. Each employee shall receive compensatory time off at the rate of time and one half for all time actually worked after thirty-five and through the fortieth working hours per week. For all time worked in excess of forty hours per week each employee shall be paid at the rate of time and one half. When compensatory time is desired and so indicated on the time sheet, the employee has two subsequent pay periods for scheduling and use of the compensatory time. At the end of the second pay period any hours not used are paid.

2. For purposes of computing overtime pay, the following absences for which compensation is paid shall be deemed time worked: Jury Duty, Sick Leave, Holidays and Vacation Time, and Compensatory Time Off.

3. Overtime shall not be pyramided and in no event shall overtime be performed unless approved by the employee's authorized supervisor.

4. Overtime requirements shall be clearly stated in advance and adhered to except in emergencies.

5. Holiday work, see holidays.

5. Article XVIII ("Work Week"), states, in relevant part, as follows:

1. Except as noted below, the regular work week for each full-time employee shall consist of seven (7) working hours per day for five (5) consecutive days. The work week begins on Monday and ends on Sunday.

6. Article XIII ("Grievance and Arbitration Procedures") states, in relevant part, as follows:

. . .

2. a)  If any dispute arises concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, the parties shall attempt to settle and adjust the dispute in accordance with the following procedures:

STEP 1.  The grievance shall be presented orally or in writing by an authorized Local 2110 representative to the grievant's immediate supervisor within a reasonable time. The grievant may be present at such time. The grievant's supervisor shall respond to the grievance orally or in writing within ten (10) working days from the day of its original presentation (response must be written if the grievance is in writing). If the grievance is not satisfactorily settled or withdrawn at Step 1, it shall immediately be subject to the provisions of Step 2.

. . .

STEP 4.  If the grievance has not been satisfactorily settled or withdrawn as a result of Steps 1, 2, and 3, within fifteen (15) working days after receipt of the answer required by Step 3, unless the parties otherwise agree, either party may submit all or part of such grievance to arbitration [~~before the American Arbitration Association~~ *See MOA regarding arbitration panel*]. Failure to file for arbitration within fifteen (15) days shall not preclude either party from a late filing. The arbitrator shall have the full authority to issue an award in a written opinion and make such other ruling as the arbitrator, in his or her sole discretion, shall determine. The arbitrator shall have no power to add to, subtract from, modify, alter or amend in any way any of the terms of this Agreement. It is the intent of the parties that all unresolved disputes between them, concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement may be submitted to arbitration, but that only the parties shall have the authority to compel arbitration of any unresolved grievance. The expense of arbitration shall be borne equally by the College and Local 2110. The award of the arbitrator shall be final, conclusive and binding on the College, Local 2110 and the employees.

. . .

### Nature of the Dispute

7.     The dispute at issue was submitted to Arbitrator Ralph S. Berger, who conducted hearings on December 11, 2015 and April 20, 2016.

8.     On July 28, 2016, Arbitrator Berger issued an Opinion and Award ("First Award"), which is attached as Exhibit D.

NYSCEF DOC. NO. 1

Case 1:19-cv-06021   Document 1-1   Filed 06/27/19   Page 5 of 11

INDEX NO. 653254/2019
RECEIVED NYSCEF: 06/03/2019

9. In the First Award, the Arbitrator determined the issue to be: "Whether the Employer violated the [CBA] by refusing to deem certain paid absences, including the absences set forth in Article XII, Section 2, as time worked for purposes of computing compensatory time after the 35th and through the 40th working hour in a week? If so, what shall be the remedy?" (First Award, p. 2).

10. In the First Award, the Arbitrator found as follows: "[T]he undersigned finds that the record evidence establishes that there has been a longstanding, consistent practice of deeming paid time off to be time worked *for purposes of calculating the 35-hour threshold* necessary to receive time and one-half for hours worked over 35 through 40 hours in a work week. Thus, hours recorded as 'Jury Duty, Sick Leave, Holidays and Vacation Time, and Compensatory Time Off,' *during the first 35 hours of the work week*, have been counted towards the threshold required to receive compensatory time off or pay at a rate of time and one half after the 35th and through the 40th hours in a work week." (First Award, p. 23) (emphasis added).

11. In the First Award, the Arbitrator also found as follows: "While the undersigned recognizes that [the employee's] use of daily overtime to calculate hours is an improper method of recording time, the evidence reflects that the College accepted paid time off in lieu of 'hours actually worked' *to reach the 35-hour threshold*." (First Award, p. 25) (emphasis added).

12. The Arbitrator awarded the following relief: "[The College] shall revert to the longstanding practice described in the Opinion accompanying this Award

4832-8812-4568.1
4 of 10

regarding the application of compensatory time and make whole any Union members who were denied overtime earnings as a result of the referenced violation." (Id. at 27).

13. By letter dated August 5, 2016, the College asked the Arbitrator to confirm its understanding of the clear and unambiguous meaning of the Award, by providing an example calculation, in an effort to expedite the disbursement of back pay to employees. A copy of the College's letter to the Arbitrator dated August 5, 2016, is attached as Exhibit E.

14. In response, the Union sent a letter to the Arbitrator objecting to his issuing any clarification of the First Award and disagreeing with the College's example calculation, and asserting that the "first 35 hours of the week" should be interpreted to mean the employee's regular work schedule, including use of PTO.

15. By email dated September 10, 2016, the Arbitrator responded to the parties' letters and informed them that he was "currently *functus officio*" and declined to resolve the issues presented in their respective letters. A copy of the Arbitrator's email dated September 10, 2016, is attached as Exhibit F.

16. Given that the Union's objection had blocked the College's efforts to obtain a clarification of the First Award from the Arbitrator so that it could expeditiously issue payments to employees, College proceeded and issued payments to employees consistent with its understanding of the First Award.

17. On April 27, 2017, the Union petitioned the United States District Court for the Southern District of New York (Civil Action No. 17-cv-3095) to confirm and enforce the Union's differing interpretation of the First Award.

18. The College filed its Answer on May 19, 2017.

- 5 -

19. After multiple rounds of motion practice addressing whether the Award should be confirmed and what the First Award meant for purposes of enforcing it, on February 19, 2019, the Honorable William H. Pauley III, U.S.D.J. issued a Memorandum and Order (the "Order") which denied the union's petition to confirm the Award and held that "[t]his matter is remanded to the arbitrator, who shall clarify the ambiguities in the Award discussed in this [Order]." A copy of the Order dated February 19, 2019, is attached as Exhibit G.

20. In the Order, Judge Pauley concluded: "It is unclear which party's interpretation of the Award is correct because nothing in the Award defines whether the 'first 35 hours' of a work week are the first 35 hours actually worked or merely the standard Monday through Friday schedule." (Ex. G, at page 8)

21. Unfortunately, Judge Pauley's Order did not accurately capture the differences in the parties' interpretations of the First Award. While the parties had briefed the issue multiple times in the federal court action, the College had never taken the position that Arbitrator Berger's First Award meant that the "'first 35 hours' of a work week are the first 35 hours actually worked." To the contrary, the issue before Judge Pauley was whether the "first 35 hours of the work week" referenced in the First Award as the threshold (for premium pay for hours actually worked from 35 to 40), meant the threshold was met upon reaching the "first 35" sequential hours of the work week (whether actually worked or using certain types of PTO under the First Award), or using a non-sequential method in which the "regular work week" of seven (7) hours a day from Monday through Friday was itself the threshold (whether actually worked or using certain types of PTO under the First Award).

### The Arbitrator's Clarified Award

22. By letter dated February 22, 2019, the College notified Arbitrator Berger of Judge Pauley's Order, enclosed a copy, and requested a conference call with both parties to discuss next steps in clarifying the Award. A copy of the College's letter dated February 22, 2019, is attached as Exhibit H.

23. Arbitrator Berger declined to schedule a conference call. Upon information and belief, neither party communicated with Arbitrator Berger after the February 22, 2019 letter or submitted any information to Arbitrator Berger relating to the parties' dispute or their positions.

24. On March 4, 2019, Arbitrator Berger issued a second award ("Clarified Award"), concluding as follows:

**CLARIFIED AWARD**:

> My Award of July 28, 2016 is hereby clarified so that it is understood that *"the first 35 hours of the work week" refers to the first 35 hours in a standard 9 a.m. to 5 p.m. Monday through Friday work week that an employee has been scheduled to work.* In accordance with the parties' practice, an employee may use paid time off (or personal days or summer Fridays) to reach the 35-hour threshold. Thereafter, the employee is entitled to receive compensatory time off or pay at the rate of time and one-half after the 35th and through the 40th hour *of the employee's scheduled work week.*

A copy of the Clarified Award is attached as Exhibit I (emphasis added).

25. Article XII ("Overtime") of the parties' CBA refers to a premium rate being paid for "all time actually worked *after thirty-five* and through the fortieth working hours *per week*." (Ex. A) (emphasis added). This is plainly a weekly overtime calculation that is based on sequential hours.

26. Nothing in Article XII refers to the "regular work week" or the "employee's scheduled work week."

27. Article XII does not impose a daily overtime requirement for hours above seven (7) in a day.

28. The CBA's grievance and arbitration procedure expressly limited the Arbitrator's authority as follows: "The arbitrator shall have no power to add to, subtract from, modify, alter or amend in any way any of the terms of this Agreement." (Ex. A).

29. The Clarified Award rewrote the plain terms of the parties' CBA and imposed an irrational result.

30. The CPLR provides that an award "shall be vacated" when the arbitrator exceeds his power. See CPLR § 7511(b)(1)(iii). The Arbitrator's Clarified Award must be vacated because the Arbitrator exceeded his limited authority by (a) rewriting the plain terms of the parties' CBA, which refer to a premium rate being paid for hours actually worked "after thirty five and through the fortieth working hours per week"; and (b) irrationally imposing what virtually amounts to a "daily overtime" requirement (with extremely limited exemptions), despite having recognized and concluded in the First Award that "[the employee's] use of daily overtime to calculate hours is an improper method of recording time." These fundamental defects in the Award constitute grounds for this Court to vacate the Clarified Award pursuant to CPLR § 7511.

Dated: June 3, 2019
Jericho, New York

**NIXON PEABODY LLP**

By: /s/ *Tara E. Daub*
Tara E. Daub
50 Jericho Quadrangle, Suite 300
Jericho, New York 11530
(516) 832-7500
tdaub@nixonpeabody.com

*Attorneys for Petitioner*
*Teachers College, Columbia University*

TO: Local 2110, United Auto Workers, AFL-CIO
256 W. 38th Street, Suite 704
New York, NY 10018

## VERIFICATION

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NASSAU  )

TARA E. DAUB, ESQ., an attorney duly licensed to practice in the State of New York, affirms that the following statements are true under penalty of perjury:

1. I am an attorney of record for petitioner Teachers College, Columbia University ("College" or "Petitioner"), in the within action. I have read the foregoing Verified Petition to Vacate Arbitration Award, know the contents thereof, and that the same are true to my knowledge, except as to the matters therein stated to be based upon information and belief, and that those matters I believe to be true.

2. I make this verification because Petitioner in this action neither resides nor maintains its principal place of business in the county wherein I maintain an office.

3. The grounds for my belief as to all matters not stated upon my own knowledge are office records and my general investigation into the facts of this case.

Dated: June 3, 2019

_____
Tara E. Daub, Esq.